•Judge Underwood delivered the following response to the petition for a re-hearing.
We have re-examined the opinion delivered in this case, and given to the petition for a re hearing, all the consideration it merits, and our conviction is, that the re-hearing asked for would not avail the- appellant, if it were granted. In reference to the lapse of time which Buck’s counsel relies on, as a bar to the equity asserted by the devisees of Holloway, the petition endeavors to obviate the opinion delivered, by asserting and insisting on the well settled principle, that twenty years constitute a good bar against equitable as well as legal demands, unless prosecuted within that period. We cordially concede the correctness of this doctrine, as, a general rule, but that it is universal, cannot be admitted. The case referred to in IV. Monroe, decided by our predecessors, fully sustains us in taking the present out of the operation of the general doctrines contended for. The petition does not notice the case of Barbour vs. Whit- *179 lock. Suppose A, seized of land, sells to B, and executes a bond for a title, having received in hand, all the purchase money; B takes possession and lives on the land twenty years, without obtaining a conveyance of the legal title. A, or his heirs then, by writ of right, recover the land, will the counsel, who has displayed so much zeal, contend, in such a case, that B’s equity has slumbered so long, that it should never be awakened? The petition seems not to have attended to the difference between tolerating an equity, in support of possession, and setting up an equity, stale- and antiquated, for the purpose of divesting possession.
The assault made upon the reputations of Umstead' and wife, has not had the effect to change our opinion in regard to the real existence and validity of the bond of John Luttreil to Richard Henderson. There is nothing in the answer of Umstead to Tanner’s bill, which will authorize or sustain the charge of perjury against him. On the contrary, he distinctly admits, in that answer, that Colonel Luttreil did sell one fourth of his interest in the grant to Henderson and Co. to Richard Henderson, and that since the death of R. Henderson, Umstead and wife “vacated the contract,” took in and now hold the bond given by Luttreil to R. Henderson. How the contract was vacated is not stated. It is an awkward expression and not inconsistent with the idea of cancelling and obliterating the bond by tearing off the signature and seal upon conveying to Henderson’s assignee. We do not discover, therefore, in Umstead’s answer, any good foundation for the unsparing imputations of perjury,, to rest upon.
As to the proceedings by which the equity of Henderson’s heirs has been vested in Holloway’s devisees, the appellant has no right to complain. If the land is not equitably his, whether it be Holloway’s or Henderson’s, cannot prejudice him. The order of publication against Henderson’s heirs is in conformity with law and the proof of its execution complete.
The attempt made in the petition, to consider Holloway’s residence on the land as notice that he only claimed under the invalid and pretended.title of Um- *180 stead and wife, so as to estop him- from relying on any other claim, is to us a novelty unsupported by any authority in an analogous case. Buck’s counsel would, in this part of the petition, make him, in substance, address Holloway thus, “I knew you claimed under Umstead and wife, but I knew that their title was worthless, and therefore, I purchased of Luttrell’s heir. I never thought you would assert claim under Luttrell himself. If you do that I am deceived!” We cannot split up the claims under which tenants in possession may hold, in this manner, for the benefit of those who purchase over their heads. The only sensible rule is, that actual residence upon the land is notice to all the world, of every claim which the tenant may legally assert, in defence of his possession. It was in consequence of such residence, that we were induced to regard Buck as a purchaser with notice. It was suggested that if he had examined the clerk’s office, he might there have found some information in relation to the bond, which is fatal to his claim; not because the deed from Hopkins to Smith, as recorded, would have been sufficient notice, independent of Holloway’s residence upon the land, but for the purpose of showing that the bond from Lut-trell to Henderson, was no secret, and that it was not, as is asserted in the petition, “never till within a few years past, exhibited to mortal eyes,” &c. By the allegations of the bill, Buck is, in substance, apprised that Holloway relies on the bond from Luttrell to Henderson, and his purchase frpnq Smith, claiming under that b.ond, and his settlement upon and improving the land, and continuing in possession from 1802. These allegations are equivalent to a direct and positive charge that Buck had due notice of Holloway’s equity. Notice in such cases is a legal deduction from the fact of residence. Stating in the bill the residence, connected with the title bond, renders notice of the equity certain, if the facts are true, and it is sufficient to allege the facts, without stating, likewise, the deductions of law.
Buck must look to Luttrell’s heir, if he purchased with warranty. If he made a speculating, chancing bargain, he must loose, because he did not go to Holloway, living on the lapd, and know of him the extent *181 of his title. There, the presumption is, he could have obtained full information. As it is not shown that he applied and was misinformed, he at his own risk, and must abide the consequences.
The petition for a re-hearing is overruled.